UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NITOR V. EGBARIN,
    *Plaintiff*,

v.

HOFFMANN & ASSOCIATES &
ANDREW S. HOFFMANN,
    *Defendants*.

No. 3:18-cv-917 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

This case concerns three letters sent by Hoffmann & Associates, Andrew S. Hoffmann (collectively "Defendants"), and Clara Suh, to a United States District Court Judge, a Hartford attorney, and the five attorneys associated with a related case, including Nitor V. Egbarin ("Plaintiff"). Compl., ECF No. 1-1, ¶¶ 1–17.

The letters relate to an attorney's fee dispute involving Mr. Egbarin and his former clients, Aleeshia and Charles Hudson ("the Hudsons"). *Id*. Mr. Egbarin alleges that the three letters constitute vexatious litigation and defamation per se, and that Defendants' conduct, alleged to be extreme and outrageous, caused him to suffer severe emotional distress for which he is entitled to monetary damages. Compl.

Defendants have moved to dismiss the case.

For the reasons discussed below, the Court now **GRANTS** Defendants' motion to dismiss, ECF No. 8.

To the extent that the deficiencies detailed in this ruling can be addressed, Plaintiff must file a motion for leave to amend the Complaint, along with the proposed amended Complaint, by April 12, 2019, or the Court will instruct the Clerk of Court to close this case.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

In September of 2014, Aleeshia and Charles Hudson "entered into a retainer agreement with attorneys Nitor Egbarin, Esq. and Gregory Osakwe, Esq. as joint counsel" in the Hudsons' actions against defendants Progressive Financial Services, Inc. and Navient Solutions, Inc. Compl. against Att'y [State of Connecticut Judicial Branch form JD-GC-6 Rev. 9-12] (signed by Charles Hudson, Nov. 6, 2017) ("Charles Hudson Grievance"), ECF No. 1-1 at 20.[1] According to the Hudsons, Mr. Egbarin and Mr. Osakwe reached separate settlement agreements with both defendants. *Id*. Thereafter, the Hudsons received the proceeds of the settlements less the amounts retained by the attorneys. *Id*. at 20–21. The Hudsons felt that the amounts retained by Mr. Egbarin and Mr. Osakwe exceeded the amounts they were entitled to under their Retainer Agreement. *Id*.

At some point in the fall of 2017, the Hudsons hired Hoffmann & Associates to represent them in their fee dispute against Mr. Egbarin and Mr. Osakwe. Def. Mem. of Law in Supp. of Def. Mot. to Dismiss Compl., ECF No. 8-1, at 3.

On November 6, 2017, the Hudsons filed separate complaints with the Connecticut Judicial Branch against Mr. Egbarin and Mr. Osakwe. Charles Hudson Grievance; Compl. against Att'y [State of Connecticut Judicial Branch form JD-GC-6 Rev. 9-12] (signed by Aleeshia Hudson, Nov. 6, 2017) ("Aleeshia Hudson Grievance"), ECF No. 1-1 at 24–29.

On November 9, 2017, Clara Suh of Hoffmann & Associates sent by e-mail a letter to the two attorneys. E-mailed Letter from Clara Suh to Nitor Egbarin and Gregory Osakwe (Nov. 9, 2017), ECF No. 1-1 at 15. In the letter, Ms. Suh alleged that "[w]e have tried for months to

---

[1] ECF pagination unless otherwise noted.

resolve with you the payments that [the Hudsons] are entitled to receive from the settlement proceeds, and you have been very much less than cooperative." *Id*. Ms. Suh then proposed a settlement involving payment of just under $95,000 (i.e., representing the amount allegedly owed to the Hudsons less costs such as deposition transcript fees). *Id*. Ms. Suh gave the attorneys roughly twenty-four hours to accept the offer. *Id*. The next day, Defendants allegedly sent a letter to United States District Judge Michael Shea, of the District of Connecticut, "to report serious misconduct" by Plaintiff. Compl., ECF No. 1-1, ¶ 10; Def. Mem. of Law in Supp. of Def. Mot. to Dismiss Compl. at 3.

On March 22, 2018, Andrew Hoffmann wrote to John J. Quinn, counsel to the Hartford Judicial District Grievance Panel for Geographical Area 13 (i.e., the panel reviewing the Hudsons' grievances). Letter from Andrew S. Hoffmann to John J. Quinn ("Hoffmann-Quinn Letter," Mar. 22, 2018), ECF No. 1-1 at 31–33.[2] In that letter, Mr. Hoffmann accused Mr. Egbarin of "twist[ing] facts", "theft", and "self dealing." *Id*. at 31–32.

On April 5, 2018, the Hartford Judicial District Grievance Panel for Geographical Area 13 ("Grievance Panel") dismissed both of the Hudsons' grievances. Letter from John J. Quinn to Aleeshia Hudson (Apr. 5, 2018), ECF No. 1-1; Letter from John J. Quinn to Charles Hudson (Apr. 5, 2018), ECF No. 1-1 at 35–38. The Grievance Panel found that the Hudsons' case involved "fee-shifting" and that "no probable cause exists that the respondent committed misconduct." *Id*.

### B. Procedural Background

Approximately one month after the Grievance Panel dismissed the Hudsons' complaints, Mr. Egbarin sued Andrew Hoffmann, the Hudsons' attorney, and his law firm in the Superior

---

[2] On Attorney Quinn's service to the Hartford Judicial District Grievance Panel for Geographical Area 13, *see*, *Attorney John J. Quinn*, Quinn & Quinn, LLC (Jan. 23, 2019, 10:36 AM), www.quinnqlaw.com/johnquinnsr.htm

3

Court for the Judicial District of Hartford. Compl., ECF No. 1-1, 4–12. The Complaint alleges four grounds for relief: (1) vexatious litigation, (2) defamation per se, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. *Id*. Mr. Egbarin seeks compensatory damages, punitive damages, double damages under Conn. Gen. Stat. § 52-568, treble damages under Conn. Gen. Stat. § 52-568, fees, and interest. *Id*.

On June 1, 2018, Defendants removed the case from the Superior Court of Connecticut, Judicial District of Hartford to this Court. Notice of Removal, ECF No. 1.

On July 2, 2018, Defendants moved to dismiss the Complaint. Notice of Mot. to Dismiss Compl., ECF No. 8.

On July 9, 2018, Mr. Egbarin opposed the motion to dismiss. Pl. Mem. of Law in Opp. to Mot. to Dismiss, ECF No. 12.

On July 24, 2018, Defendants replied. Def. Reply Affirm. of Andrew S. Hoffmann, ECF No. 16.

On March 7, 2019, the Court held a hearing on the motion to dismiss. Minute Entry [Motion to Dismiss Hearing], ECF No. 27.

**II.     STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (*quoting Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also*, *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). This is particularly true if the documents are "'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 153 (2d Cir. 2002); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied by the letters attached" to the complaint); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (when reviewing a judgment on the pleadings, courts assume facts alleged are true "unless contradicted by more specific allegations or documentary evidence.").

## III. DISCUSSION

### A. Vexatious Litigation

The common law tort of "[v]exatious litigation requires a plaintiff to establish that: (1) the previous lawsuit or action was initiated or procured by the defendant against the plaintiff; (2) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; (3) the defendant acted without probable cause; and (4) the proceeding terminated in the plaintiff's favor." *Rioux v. Barry*, 283 Conn. 338, 347, 927 A.2d 304, 309 (2007).

Connecticut courts have permitted attorneys to be sued for initiating actions on behalf of their clients. *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94–95, 912 A.2d 1019, 1027 (2007) ("The test for deciding whether a litigant acted with probable cause also is well settled . . . . The standard with respect to an attorney's decision to file a lawsuit on a litigant's behalf, however, is less settled."); *see also*, Rockwell v. Rockwell, No. AANCV135010935S, 2014 WL 5137999, at *4 (Conn. Super. Ct. Sept. 10, 2014) (denying summary judgment to an attorney in a vexatious litigation suit). Liability for vexatious litigation has extended to grievance proceedings and investigations. *Rioux*, 283 Conn. at 342 (finding an internal affairs investigation of commanding officer in the Connecticut state police an action for the purpose of a vexatious litigation suit).

Here, Charles and Aleeshia Hudson filed grievances against Mr. Egbarin with the Connecticut Judicial Branch. Charles Hudson Grievance; Aleeshia Hudson Grievance. Defendants represented the Hudsons when they filed the grievances. *Id*.; Def. Mem. of Law in Supp. of Def. Mot. to Dismiss Compl., ECF No. 8-1, at 3. Furthermore, Defendants sent a letter regarding the grievances to Mr. Quinn. Hoffmann-Quinn Letter. It is possible that Defendants' participation in the grievance process could satisfy the first prong of the vexatious litigation test. *Rioux*, 283 Conn. at 347.

Plaintiff's claim fails, however, on the third prong of the test, "probable cause" and the analysis need not go any further. *Id*. "In the context of a claim for vexatious litigation, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *Bernhard-Thomas Bldg. Sys., LLC v. Dunican*, 286 Conn. 548, 554, 944 A.2d 329, 334–35 (2008) (internal quotations and citations omitted); *see* CONN. GEN. STAT. § 52–568; *see also*, *DeLaurentis v. New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991). In suits against attorneys, Connecticut courts have tended to draw the line on the "probable cause" element of the vexatious litigation test. *Falls Church Grp., Ltd., LLP*, 281 Conn. at 100–03 ("[F] or purposes of a vexatious suit action, [t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it . . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable [person] in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of .") (internal quotations and citations omitted)).

Mr. Egbarin has not plausibly alleged that the Defendants lacked a good faith belief that the Hudsons were owed additional money under their retainer agreement with him.

7

While his Complaint alleges that the correspondence sent by Mr. Hoffmann, on behalf of his law firm, "was without probable cause as there was a lack of knowledge of facts sufficient to justify a reasonable person in believing that [Mr. Egbarin] committed criminal misconduct of fraud or misrepresentation or that [he] falsely represented that he was awarded attorney's fees by the court," Compl.at ¶ 19, these conclusory allegations are not entitled to any legal weight. *See Iqbal*, 556 U.S. at 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do not suffice."); *see also Twombly*, 550 U.S. at 555.

Indeed, Mr. Hoffmann's letter to the Grievance Panel details the nature of the dispute between Mr. Egbarin and the Hudsons: the Hudsons understand their retainer agreement with Mr. Egbarin as entitling him to no more than one-third of any settlement proceeds, while Mr. Egbarin views the retainer agreement as providing for circumstances where more than one-third in attorney's fees may be obtained. *See* Hoffmann-Quinn Letter.[3] Given this correspondence, Mr. Egbarin needed to plead facts sufficient to clarify his entitlement to relief. *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss."). Because the letter outlines Defendants' position on the fee dispute, Mr. Egbarin had to address

---

[3] Mr. Egbarin included Mr. Hoffmann's letter to John J. Quinn as an exhibit and attached it to his Complaint. *Egbarin v. Hoffmann & Associates*, No. HHD-CV18-6094871-S (filed May 21, 2018); *see also* Letter from Andrew S. Hoffmann to John J. Quinn (Mar. 22, 2018), ECF No. 1-1 at 31–33. As a result, the Court incorporates the letter by reference into Mr. Egbarin's Complaint. *Mercer v. Schriro*, 337 F. Supp. 3d 109, 134 (D. Conn. 2018) ("On a Rule 12(b)(6) motion to dismiss, the Court assesses the legal sufficiency of the complaint . . . considering only the factual allegations therein, documents attached to that pleading as exhibits or incorporated by reference, matters of which judicial notice may be taken, and documents upon which Plaintiff relied in bringing suit."); *see Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 97–98 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 926, 200 L. Ed. 2d 203 (2018) ("For instance, Connecticut's draft 2015 RFP, appended to the Allco III Complaint, as well as the final 2015 RFP, appended to the Allco IV Complaint, provide (a) that '[t]his RFP process, including any selection of preferred projects, does not obligate any [utility] to accept any bid' . . . and (b) that the winning bidders 'will enter into separate contracts with one or more [utilities] at the discretion of the [utilities].' This language makes clear, contrary to Allco's contention, that it is possible for a winning bidder to fail to reach an agreement with the utilities, or for an agreement to be terminated if a party is unable or unwilling to fulfill its terms—as apparently happened with Number Nine Wind." (internal quotations and citations omitted)).

with some specificity how Defendants' position lacked a good-faith basis. *Falls Church Grp., Ltd., LLP*, 281 Conn. at 100–03 ("Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable [person] in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of ."). But no such clarity has been provided.

Absent such clarity, Mr. Egbarin has failed to provide the "factual amplification . . . ," *Arista Records LLC*, 604 F.3d at 120, to support a finding that Defendants' letters were objectively unreasonable or that Defendants lacked probable cause for their belief that the Hudsons were owed a greater portion of their settlements.

As a result, Mr. Egbarin's vexatious litigation claim must be dismissed.

**B. Defamation Per Se**

In a common law action for defamation,[4] "the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms v. Seaman*, 308 Conn. 523, 547–48, 69 A.3d 880, 894 (2013).

Defamation requires a showing of falsity, as the communication of true statements does not constitute defamation. *See Gambardella v. Apple Health Care, Inc.*, 291 Conn. 640, 969 A.2d 736, 749 (2009) ("In light of this evidence, there simply was no basis for a belief that the plaintiff had stolen property from the facility. . . . In other words, whatever belief Sweeney may have harbored with respect to the policy prohibiting gifts to employees, that belief did not alter

---

[4] While Plaintiff's complaint does not cite to a legal basis for his "defamation per se" claim, his memorandum in opposition to the motion to dismiss cites to the common law tort of defamation and the four-part test discussed in *Simms v. Seaman*, et al. See Pl. Mem. of Law in Opp. to Mot. to Dismiss at 4.

the ownership of the property and cannot alter the meaning of theft, a criminal act defined by law."); *Simms v. Seaman*, 308 Conn. 523, 548–49, 69 A.3d 880, 890 (2013) (". . . the communication of a falsehood is an essential element of both defamation and fraud . . . .")

Attorneys enjoy absolute immunity from "defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings." *Rioux*, 283 Conn. at 344. "Connecticut attorneys have tested the limits of the privilege with respect to alleged misconduct other than defamatory statements during judicial proceedings, with mixed results." *Simms*, 308 Conn. at 540. Despite a few narrow exceptions to the privilege, *e.g.*, *Rioux*, 283 Conn. 349, Connecticut courts confer immunity on attorneys whose allegedly defamatory statatements were made in the course of representing their clients. *Simms*, 308 Conn. at 548–49 ("Commentators have observed that, 'because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." . . . . Accordingly, because the communication of a falsehood is an essential element of both defamation and fraud, the litigation privilege provides a complete defense to both causes of action." (internal quotations, citations, and emphasis omitted)).

Plaintiff alleges that "[t]he Defendants' aforesaid defamatory statement falsely charged Plaintiff with having committed a crime of fraud and misrepresentation that involves moral turpitude or for which an infamous penalty is attached, constitute defamation per se." Compl. ¶ 25. From the Complaint, it is not clear whether the allegedly defaming statement was issued in the Hudsons' grievances, the Defendants' letters to Judge Shea or attorney Quinn, or Ms. Suh's letter to Plaintiff and other attorneys. Plaintiff's opposition to the motion to dismiss clarifies that Ms. Suh's e-mailed letter contains the defaming statements. Pl. Mem. of Law in Opp. to Mot. to Dismiss at 5–6 ("First, Defendants falsely assume that Plaintiff's defamation claims 'against' defendants [are] based on their November 10, 2017, letter to Judge Shea of this Court and their

10

subsequent March 22, 2018, letter to the Connecticut Grievance Committee . . . . The complaint also alleges that Defendants sent email communication dated Thursday, November 9, 2017 . . . . This email communication with its attachment contain Defendants' statement falsely charging Plaintiff with having committed misconduct of fraud or misrepresentation . . . . One or more reasonable third persons received the aforesaid email communication and the attachment.").

Defendants invoke absolute immunity for any defaming statements, arguing that Ms. Suh's e-mail was simply a demand letter, and noting that Mr. Egbarin has not provided the e-mail's attachment to this Court. Def. Reply Affirm. of Andrew S. Hoffmann ¶¶ 3–4, 8; *see also* Def. Mem. of Law in Supp. of Def. Mot. to Dismiss Compl. Defendants also claim that Mr. Egbarin's "defamation claim cannot survive a motion to dismiss" because he does not "specifically identify the particular statements that he now claims are defamatory."

The Court agrees.

Given that Hoffmann & Associates were retained by the Hudsons to seek settlement proceeds from Plaintiff, *see*, *e.g*., Charles Hudson Grievance, all communications relating to the fee dispute—including allegations of attorney fraud or misrepresentation—enjoy some level of privilege. *See Simms v. Seaman*, 308 Conn. at 540 (on the long history of the privilege and broad coverage afforded to attorneys in defamation suits on account of the privilege). But the Court need not outline the contours of the privilege against defamation per se for attorneys representing clients, because Mr. Egbarin has provided only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 556 U.S. at 678 (2009); *see also*, *Twombly*, 550 U.S. at 555.

Mr. Egbarin has not provided Defendants' letter to Judge Shea to the Court and has clarified that that letter is not the basis for his defamation claim. Pl. Mem. of Law in Opp. to

Mot. to Dismiss at 5–6. All that remains is Ms. Suh's one-page demand letter. E-mailed Letter from Clara Suh to Nitor Egbarin and Gregory Osakwe (Nov. 9, 2017). Mr. Egbarin has not identified a defamatory phrase or sentence within Ms. Suh's letter. At its most critical, Ms. Suh's letter commands: "you will pay the Hudsons the sum of $1,404.00 representing 'costs' that were not actually awarded to you that you kept from the proceeds." *Id*. That statement, on its own, could suggest fraud or misrepresentation. It could also suggest mistake, oversight, an accounting error, or—as Defendants contend—an unfair equivocation of a court-approved settlement to a court-ordered award. Hoffmann-Quinn Letter. Mr. Egbarin has offered no interpretation of that sentence or any other, nor has he alleged that the statement was untrue and defamatory. *See Gambardella*, 291 Conn. at 640 (discussing how plaintiffs must prove falsity to sustain a defamation claim).

The Court has construed the allegations of the Complaint in the light most favorable to the plaintiff, has drawn all inferences in his favor, *Cohen*, 711 F.3d at 359, and incorporated Ms. Suh's letter into the complaint by reference, *McCarthy*, 482 F.3d at 191. Still, the Court cannot find that Mr. Egbarin has provided the "factual amplification . . . to render a claim plausible." *Arista Records LLC*, 604 F.3d at 120. Mr. Egbarin's argument fails on the first prong of the test; he has not plausibly alleged that Defendants published a defamatory statement. *Simms*, 308 Conn. at 547–48.

Though the Court need not proceed further, the Court notes that the e-mail was distributed to four attorneys: Mr. Egbarin, Mr. Osakwe, Mr. Hoffmann, and [Craig] Cohen. Given this legal audience, the e-mailed letter and its attachment constitutes the sort of legal communication afforded broad immunity by Connecticut courts. *Simms*, 308 Conn. at 548–49 ("Commentators have observed that, 'because the privilege protects the communication,

nature of the theory [on which the challenge is based] is irrelevant." . . . . Accordingly, because the communication of a falsehood is an essential element of both defamation and fraud, the litigation privilege provides a complete defense to both causes of action." (internal quotations, citations, and emphasis omitted)).

As a result, Mr. Egbarin's claim for defamation per se must be dismissed.

**C. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress**

Mr. Egbarin alleges that Defendants' vexatious litigation and defamation per se also constitute intentional infliction of emotional distress and negligent infliction of emotional distress. Compl. ¶¶ 30–32, 36–39; Pl. Mem. of Law in Opp. to Mot. to Dismiss at 11. Defendants argue that if the Court dismisses Mr. Egbarin's vexatious litigation and defamation per se claims, it must also dismiss his intentional infliction of emotional distress and negligent infliction of emotional distress claims.

The Court agrees.

Mr. Egbarin alleges that the Defendants' conduct "was extreme and outrageous . . ." and "Defendants intentionally or recklessly engaged in the conduct . . ." and "the conduct of Defendants was the proximate cause of the resulting severe emotional distress." Compl. ¶¶ 31–32. He does not explain what "conduct" forms the basis of his intentional infliction of emotional distress and negligent infliction of emotional distress claims. He does, however, incorporate the conduct described in the vexatious litigation and defamation per se sections of his Complaint into these claims. Compl. ¶¶ 30, 36; *see also* Pl. Mem. of Law in Opp. to Mot. to Dismiss at 11 ("For the reasons set forth in Points I and II above, Plaintiff's complaint also sufficiently alleges a cause of action for intentional infliction of emotional distress and negligent infliction of emotional distress arising from the conduct of the Defendants."). Thus, the intentional infliction

13

of emotional distress and negligent infliction of emotional distress claims are contingent on a finding of vexatious litigation or defamation per se.

As described above, both the vexatious litigation and defamation per se claims fail.

Because these claims fail, the intentional infliction of emotional distress and negligent infliction of emotional distress claims also fail.

Even if that were not the case, the emotional distress claims would fail to survive a motion to dismiss because Plaintiff's claim that "the conduct" of Defendants "cause[d] severe emotional distress," *see, e.g.*, Compl. ¶ 31, falls well below the pleading required for an adequate Complaint. *Iqbal*, 556 U.S. at 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .")

### D. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*.

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

14

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

Mr. Egbarin has failed to demonstrate a lack of probable cause for Defendants' letters. *Rioux*, 283 Conn. at 347 ("[v]exatious litigation requires a plaintiff to establish that . . . (3) the defendant acted without probable cause[.]"). Instead, Mr. Egbarin has submitted documentation of Defendants' probable cause in the form of (1) the Hudson's grievances to the Connecticut Judicial Branch, (2) Ms. Suh's related letter, and (3) Mr. Hoffmann's letter to John Quinn.

Defendants maintain that there was a fee dispute between the Hudsons and Mr. Egbarin. Def. Mem. of Law in Supp. of Def. Mot. to Dismiss Compl. at 4; Minute Entry [Motion to Dismiss Hearing], ECF No. 27. Mr. Egbarin's submission of the Hudsons' grievances supports Defendants' belief. *See* Aleeshia Hudson Grievance; Charles Hudson Grievance. Each grievance is dated and signed "under penalties of false statements." *Id*. The grievances allege that the two attorneys, Mr. Egbarin and Mr. Osakwe, owe the Hudsons roughly $96,666 under the "formula set forth in the Retainer Agreement" with Mr. Egbarin. *See* Aleeshia Hudson Grievance at 5. Mr. Egbarin also submits Ms. Suh's letter, which references the same $96,666 amount in controversy. E-mailed Letter from Clara Suh to Nitor Egbarin and Gregory Osakwe, ECF No. 1-1 at 15. Mr. Egbarin submits Mr. Hoffmann's letter to attorney Quinn, which references the same fee dispute and amount allegedly owed to the Hudsons (i.e., $145,000 settlement, less Mr. Egbarin's fee of $48,332, totaling $96667 owed to the Hudsons). Hoffmann-Quinn Letter at 1.

If Mr. Egbarin moved for leave to amend, the Court likely would deny that motion as futile. *Lucente*, 310 F.3d at 258 (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)). Mr. Egbarin has already submitted the documents that he "relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (At the motion to dismiss stage, a court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). Those documents demonstrate Defendants' good faith belief in the Hudsons' fee dispute with Mr. Egbarin. Any contrary allegations would be "belied by the letters attached" to Mr. Egbarin's Complaint. *Blue Tree Hotels Inv. (Canada), Ltd., Inc.*, 369 F.3d 212, 222 ("Improper intent on the part of the vendors might be inferred from the Blue Tree Owners' allegation that vendors who were unwilling or unable to make the vendor payments were precluded from competing for the Hotels' business and, as a result, the Blue Tree Owners were unable to negotiate advantageous prices and terms with such vendors. But such an inference is belied by the letters attached to the Blue Tree Owners' complaint in which the Blue Tree Owners objected to the manner in which Starwood was allocating vendor payments. These letters contain no assertion that vendor payments are illegal or made pursuant to illicit agreements between Starwood and the vendors to act contrary to the Blue Tree Owners' interests. Rather, they demonstrate that as of December 1998, if not earlier, the Blue Tree Owners were aware that Starwood was receiving vendor payments as a result of its volume purchasing power.").

Thus, amendment of Mr. Egbarin's vexatious litigation claim would be "unlikely to be productive." *Lucente*, 310 F.3d at 258 (noting leave to amend may be denied when amendment is

"unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

Likewise, Mr. Egbarin has admitted that Defendants are entitled to absolute immunity for their representation of the Hudsons, and that the letters at issue in this action fall within the scope of that immunity. Minute Entry [Motion to Dismiss Hearing], ECF No. 27; *see also Rioux*, 283 Conn. at 344 (Attorneys enjoy absolute immunity from "defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings."). Thus, amendment of the defamation per se claim also likely would be futile. *Lucente*, 310 F.3d at 258 (an amendment is "futile" if it "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

Finally, Mr. Egbarin's intentional infliction of emotional distress and negligent infliction of emotional distress claims are derivative of his vexatious litigation and defamation per se claims. Compl. ¶¶ 30, 36; *see also* Pl. Mem. of Law in Opp. to Mot. to Dismiss at 11 ("For the reasons set forth in Points I and II above, Plaintiff's complaint also sufficiently alleges a cause of action for intentional infliction of emotional distress and negligent infliction of emotional distress arising from the conduct of the Defendants."). Because amendment of his vexatious litigation and defamation per se claims are likely to be futile, amendment of these derivative claims are likely to be futile as well.

Nevertheless, to the extent that Mr. Egbarin can remedy the deficiencies outlined in this ruling, he may file a motion for leave to amend his Complaint, attach the proposed amended Complaint to that motion, and the Court will then determine whether such leave to amend will be granted or denied as futile. *See Foman*, 371 U.S. at 182 (Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]").

Any such motion, along with the proposed amended Complaint, must be filed by April 12, 2019 or the Court will instruct the Clerk of Court to close this case.

**IV.     CONCLUSION**

For the reasons discussed above, the Court now **GRANTS** Defendants' motion to dismiss, ECF No. 8.

To the extent that the deficiencies detailed in this ruling can be addressed, Plaintiff must file a motion for leave to amend the Complaint, along with the proposed amended Complaint, by **April 12, 2019**, or the Court will instruct the Clerk of Court to close this case.

SO ORDERED at Bridgeport, Connecticut, this 12th day of March, 2019.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE